**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| EARL E. HARVEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 08-cv-413-TLW ) |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Earl E. Harvey, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), requests judicial review of the decision of the Commissioner of the Social Security Administration denying plaintiff's applications for disability benefits ("DIB") and supplemental security benefits ("SSI") under Titles II and XVI of the Social Security Act ("Act"). In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before the undersigned United States Magistrate Judge. [Dkt. # 12]. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals.

**Plaintiff's Background**

Plaintiff was born July 22, 1957. He was fifty years old at the time of the ALJ's final decision on November 19, 2007.[1] [R. 32, 117]. Plaintiff has a seventh grade education. [R. 32, 57-64]. Plaintiff's past relevant work includes plastic mixer, grinder, trash collector, and car wash

---

[1] Plaintiff's applications for DIB and SSI were denied initially and upon reconsideration. [R. 1-4, 13-23, 65-73]. A hearing before Administrative Law Judge ("ALJ") Lantz McClain was held September 28, 2007, in Tulsa, Oklahoma. [R. 26-56]. By decision dated November 19, 2007, the ALJ found that plaintiff was not disabled at any time through the date of the decision. [R. 13-23]. On May 23, 2008, the Appeals Council denied review of the ALJ's findings. [R. 1-4]. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

attendant. [R. 7, 53-54, 175-182]. Plaintiff's original applications claimed a disability onset date of September 1, 2002. [R. 114, 117].

In his application for DIB, plaintiff alleged his inability to work was due to "my disabling condition." [R. 117]. In a face-to-face interview with T. Wilson (no relation to the undersigned) of the Social Security Administration to complete a Disability Report ( Field Office - Form SSA-3367), plaintiff claimed "upper and lower back problems - pain in neck and back, liver and kidney problems- stomach pains, [and] GERD" as the illnesses, injuries or conditions limiting his ability to work. [R. 131]. Upon questioning by his attorney at the September 28, 2007 hearing, plaintiff testified that the "single biggest reason that limit[ed] [his] ability to do a full-time job" was "my back, my low back and my stomach and stuff like that. I just cannot. I can't sit and I can't walk really far." [R. 33].

Plaintiff's medical records comprise 41 pages of the record, and begin with an October 28, 2004 visit to Tulsa Regional Medical Center where plaintiff complained of "hurting on [the] right side." [R. 193]. He was seen and treated for "belly/rib pain," given magnesium citrate to drink for the pain, and instructed to return to Tulsa Regional Medical Center or the emergency room if there was no improvement. A follow up appointment was made for plaintiff. [R. 197]. Aside from this visit, there is record of a visit the next day to Tulsa Regional for a cough, and several tests were performed, after which plaintiff was ultimately diagnosed with emphysema; record of a consultative examination by Dr. Angelo D'Alessandro, D.O., and six pages four months apart from Neighbor for Neighbor Clinic (including lab results). When questioned at the hearing about the reasons he did not go to a doctor more often to seek relief for his symptoms, plaintiff explained that his reluctance was because as a child growing up, "we didn't see doctors. [I]f the bone wasn't sticking out and you

wasn't [sic] bleeding to death you didn't go to the doctor. You got up and you went back to work." [R. 33]. He also noted that financial limitations contributed to his decision not to seek medical care, stating he could not afford to go. [R. 34].

On December 29, 2005,[2] a consultative examination by Dr. Angelo D'Alessandro, D.O. showed plaintiff's chief complaint to be his back. Plaintiff said he had fallen approximately two years before and experienced low back pain with some radiation down both legs. Plaintiff reported a prior history of pneumonia and bronchitis, and complained of shortness of breath upon exertion, but denied chronic coughing or asthma. He denied high blood pressure, heart disease or chest pain. He complained of abdominal cramping, and reported a "spot on his liver." [R. 223].

Upon physical examination, Dr. D'Alessandro found plaintiff's gait to be normal, and noted he had no trouble getting on or off the exam table. Dr. D'Allessandro reported that plaintiff had normal heart sounds, bronchovesticular sounds in both lung fields, and that plaintiff's chest expanded equally bilaterally. Dr. D'Alessandro found plaintiff to have generalized abdominal tenderness on palpation. [R. 223].

In examining plaintiff's back and legs, Dr. D'Alessandro found "paravertebral tenderness is present bilaterally with straight leg raising being positive to 90 degrees bilaterally, and there does not appear to be any joint deformities or swellings. The range of motion of his joints are all within normal limits except his lumbodorsal movements. The 'knots' he complains of are small bony protrusions of the sacrum [large irregular triangular shaped bone below the lumbar region of the spine]." Dr. D'Alessandro found no evidence of muscle atrophy or paralysis. He reported plaintiff's

---

[2]     Dr. D'Alessandro signed the report January 3, 2006, but the examination is dated December 29, 2005. [R. 224].

sensory, motor, and vibratory sensations were all intact and he was able to heel-to-toe walk. [R. 223-224].

In his final assessment of plaintiff, Dr. D'Alessandro found plaintiff to have "a normal gait to speed, stability, and safety. Dexterity of gross and fine manipulation is present. Grip strength is right 35 kg and left 37 kg. There are no joint deformities or swellings." [R. 224]. Dr. D'Alessandro noted pain was present in plaintiff's lumbosacral spine, however, he also noted pain was absent from his cervical spine. [R. 225]. Plaintiff's range of motion evaluation was all normal aside from his back extension and flexion. His back extension was 5 degrees below normal and flexion was at 30 degrees below normal. [R. 226-227].

On March 7, 2006, Luther Woodcock, M.D., a medical consultant for the Social Security Administration, submitted a physical RFC form for plaintiff. He gave plaintiff a medium RFC, stating he could occasionally lift and/or carry (including upward pulling) 50 pounds, frequently lift and/or carry (including upward pulling) 25 pounds, stand and/or walk (with normal breaks) for a total of six hours in an eight hour work day, sit (with normal breaks) for a total of six hours in an eight hour work day, and "unlimited" push and/or pull "other than as shown for lift and/or carry" (including the operation of hand and/or foot controls). Dr. Woodcock listed balancing as occasional on postural limitations, with climbing, stooping, kneeling, crouching and crawling all rated frequent, no manipulative limitations, no visual limitations, and no communicative or environmental limitations. [R. 229-236]. There is no other physical RFC in plaintiff's record, and the ALJ ultimately determined plaintiff to have a lower RFC than Dr. Woodcock, rating plaintiff able to do light work. [R. 19, 54].

Although plaintiff's attorney requested a consultative psychological examination, the ALJ

determined that such an examination was not necessary, because the plaintiff did not meet his burden of proof in that there was no evidence in the record indicating that plaintiff had a mental impairment. [R. 16]. The ALJ cited <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1167 (10th Cir. 1997) which states, "[s]pecifically the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." [R. 16].

In assessing plaintiff's qualifications for DIB and SSI, the ALJ determined at step one that plaintiff met the insured status requirements of the Act through December 31, 2007 and that he had not been engaged in substantial gainful activity since September 1, 2002. [R. 16, 18]. At step two, the ALJ found that plaintiff had the severe impairments of chronic lumbar strain and emphysema. [R. 18]. The ALJ discussed the consultative examination by Dr. Angelo D'Alessandro, D.O., regarding plaintiff's back. He also discussed a CT scan performed on plaintiff which revealed a small liver lesion, and discussed lab tests showing elevated liver functions, normal bilirubin and normal creatinine. The ALJ noted plaintiff denied any further testing, treatment or diagnosis of liver disease. [R. 19]. At step three, the ALJ found that plaintiff's impairments did not meet the requirements of any Listing, giving specific emphasis to Listing 1.04, pertaining to disorders of the spine, and Listing 3.02, chronic or spinal stenosis as required under Listing 1.04. [R. 19]. The ALJ also found that claimant's chronic pulmonary insufficiency was not at the level of severity described in Listing 3.02. [R. 19].

The ALJ found plaintiff had the residual functional capacity ("RFC") to perform a range of light work as follows:

> claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk at least 6 hours in an 8-hour day; and sit at least 6 hours in an 8-hour day.

[R. 19].

At step four, the ALJ determined that plaintiff was capable of performing his past relevant work as a car wash attendant, stating this work does not require the performance of work-related activities precluded by the claimant's RFC. See 20 C.F.R. § 404.1565 and 416.965. [R. 22]. The ALJ discussed testimony from the vocational expert regarding the levels of plaintiff's past work history. Plaintiff's past work ranged from heavy (trash collector), medium (plastic mixer and grinder), to light (car wash attendant), and all unskilled work. The ALJ compared plaintiff's RFC with the physical and mental demands of being a cash wash attendant and found plaintiff "able to perform it as actually and generally performed." [R. 22]. The ALJ concluded that plaintiff was not disabled under the Act from September 1, 2002, through the date of the decision. [R. 23]. This concluded the sequential evaluation process.

## Issues Raised

On appeal, plaintiff alleges two errors. First, plaintiff argues that the ALJ failed to perform a proper credibility determination. [Dkt. # 17 at 1]. Second, plaintiff alleges the ALJ violated his own regulations about authentication of the medical reports. [Dkt. # 17 at 1].

## Review

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. 404.1512(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education,

and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 404.1520; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (describing the five steps in detail).  "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

The role of the court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards.  Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Id.  The Court's review is based on the record taken as a whole, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id.  The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands.  White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff first argues the ALJ failed to perform a proper credibility determination, specifically that he miscast evidence and used "boilerplate language" regarding plaintiff's visits to the Neighbor for Neighbor clinic, and in so doing, committed reversible error.  [Dkt. # 17 at 3].  The Court disagrees.  In determining plaintiff's credibility, the ALJ considered factors such as plaintiff's

testimony, his complaints of pain, his reported activities of daily living, medical treatment and lack thereof, and his limited medical records. [R. 21-22]. The ALJ also followed the criteria for evaluating allegations of individual symptoms and credibility as set forth in SSR 96-7p, and the ALJ properly took into account the relevant factors listed in 20 C.F.R. 404.1529(c) and 416.929(c).[3] [R. 20-21]. The ALJ concluded that, contrary to plaintiff's claims of disabling pain, the objective medical evidence indicated that plaintiff exhibited only moderate symptoms. Nonetheless, the ALJ took into account plaintiff's claimed level of pain in determining the RFC, stating that plaintiff "would be limited to the [light] residual functional capacity set out above." [R. 22].

Specifically regarding plaintiff's emphysema, although the ALJ determined that plaintiff has a severe impairment, the ALJ also noted plaintiff's testimony that he continues to smoke 1 ½ to 2 packs of cigarettes daily, and that plaintiff takes no medication for shortness of breath. [R. 22]. Likewise, the ALJ noted that Dr. D'Alessandro's examination failed to find any signs of shortness of breath and that plaintiff's chest expanded equally bilaterally. [R. 22, 223]. The ALJ noted that plaintiff sweeps and mops the floor, cleans, washes dishes, prepares meals, shops for food, watches television and drives a car as needed. The ALJ concluded, given the objective medical evidence in the record, that the plaintiff's RFC, as it relates to his emphysema, is reasonable and that he should be able to function within its limitations without experiencing significant exacerbation of his

---

[3]   These factors include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms (SSR 96-7p).

symptoms. [R. 22].

As to plaintiff's claim that he experiences severe back pain, Dr. D'Alessandro's December 29, 2005 examination did not find a basis for this allegation. Rather, Dr. D'Alessandro found that plaintiff has some reduction in range of motion in the lumbar spine with paravertebal tenderness. In addition, although some pain was present in the lumbosacral spinal area, none was found in plaintiff's cervical spine, [R. 21-22], nor did plaintiff require any assistive device to safely ambulate, and there were no joint deformities or swelling. [R. 22]. Nonetheless, the ALJ still took into consideration plaintiff's testimony regarding his level of pain and his limited ability to lift, when the ALJ opined that limiting plaintiff to "only light lifting, that is 20 pounds of weight occasionally and 10 pounds frequently should not cause excessive pain or place undue strain on his back." [R. 22]. The ALJ went on to note that there are no pathological clinical signs, significant medical findings, nor any neurological abnormalities that would establish the existence of a pattern of pain of such severity as to prevent plaintiff from engaging in any work on a sustained basis. Based on his findings, the ALJ concluded that plaintiff's testimony regarding pain was credible, but only to the extent that plaintiff would be limited to the light RFC set out above. [R. 22].

Additionally, there are three Adult Function Reports ("AFR") in the record detailing what plaintiff claims he is able to do on a daily basis. These reports are inconsistent, [R. 138-145, 183-190], and the second report completely contrasts with the first and third, even as to whether plaintiff is right or left handed. [R. 159-166]. For example, plaintiff noted on the first AFR that he was unable to lift anything due to back pain. [R. 143]. On the third AFR, plaintiff noted he could "only lift about 30 [pounds]," that squatting hurt, and being on his feet for about an hour caused his back to hurt. [R. 188]. On the first and third AFRs, plaintiff noted that he did not use any ambulatory

devices (i.e., crutches, walker, cane, etc.) to help him walk, [R. 144, 189], and plaintiff claimed he was able to walk approximately two (2) or three (3) blocks before he needed to stop to rest.[4] [R. 143, 188]. The second AFR (completed by plaintiff's sister), however, states that plaintiff is unable to "walk or lift due to pain/cannot breathe due to lungs....", [R. 164], and that plaintiff's entire day is consumed by trying to find a comfortable position where he is "not doubled over in pain...." [R. 159]. These statements are in contrast to the other AFRs, and to plaintiff's own claims, and to the hearing testimony that he is able to sweep, wash dishes, and vacuum. [R. 40, 138, 185].

Plaintiff has also cited his own testimony as evidence of subjective limitations, but he has done so without the support of accepted clinical and medical tests. This effort fails, since disability cannot be premised on subjective complaints alone. SSR 96-7p.

Finally, plaintiff's history of medical treatment undermines his credibility. Plaintiff refused follow up treatment at Tulsa Regional Medical Center after his October 29, 2004 visit.[5] The record shows at least three telephone calls were placed to the number plaintiff gave Tulsa Regional requesting he come back for follow up care regarding his liver. There is no indication he ever followed through with that recommended care. [R. 218]. In fact, plaintiff did not seek additional medical care until his consultative examination with Dr. D'Alessandro in December, 2005. [R. 222-227]. Even after this examination plaintiff did not seek additional medical care until May, 2007, when the record shows he consulted the Neighbor for Neighbor Clinic for a knot on his right side,

---

[4] At the September 28, 2007 hearing, he testified he was able to walk "three to four blocks" before he needed "to stop and sit down." [R. 38-39]. Plaintiff also testified some days he is unable to get out of bed due to the pain because it "hurts too bad to move," yet he then testified that when his pain reaches that level, he "usually tr[ies] to walk it off." [R. 39].

[5] The Tenth Circuit has held that a plaintiff's failure to follow a doctor's instructions is a factor in determining credibility. Sims v. Apfel, 172 F.3d 879 (10th Cir. 1999) (unpublished).

chest pain, and central back pain. [R. 238-244]. The records indicate that plaintiff was scheduled to have a CT scan on August 1, 2007, and that he also needed an x-ray, but there is no evidence these tests were performed [R. 238], and, according to the record, plaintiff did not return to the Neighbor for Neighbor Clinic until November 28, 2007, complaining at that time of back pain due to a fall. Plaintiff was prescribed Motrin for pain. [R. 246].

The ALJ opined that it was reasonable to assume that if plaintiff were in the constant, debilitating pain he claimed, he would have exhausted every option available to him to relieve the pain, including seeking relief from public facilities such as the Neighbor for Neighbor Clinic. [R. 21]. Instead, the record shows that although plaintiff was willing and capable of seeking medical care, he repeatedly declined to follow the recommended courses of treatment and/or testing and did not avail himself of any public services until five (5) years after his alleged onset date. [R. 238-244]. See 20 C.F.R. § 404.1530.

Credibility determinations are peculiarly the province of the finder of fact, and the Court should affirm that finding if it is closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Hill v. Astrue, 289 Fed. Appx. 289, 294 (10th Cir. 2008) (unpublished).[6] As set forth above, the ALJ's credibility determination is closely linked to substantial evidence which establishes that plaintiff's testimony was not entirely credible; specifically, that his own statements and actions regarding his level of pain and disability are inconsistent, that his claimed level of pain and disability are not consistent with the medical evidence (including his medical examinations), and that he was not following prescribed medical treatment.

---

[6] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

Moreover, plaintiff's arguments are conclusory, and he fails to cite any medical evidence which contradicts the ALJ's assessment of his credibility. Thus, the Court finds that the ALJ's determination of plaintiff's credibility is supported by substantial evidence.

Finally, plaintiff argues that the ALJ violated his own regulations regarding the authentication of medical reports. Plaintiff's counsel objected to Exhibit 4F, the physical RFC of Dr. Luther Woodcock, based upon the signature of Dr. Woodcock. Dr. Woodcock listed his medical consultant code (19) on the signature line, but did not list "M.D." beside his name. The ALJ overruled plaintiff's counsel's objection, stating, "...we know who Luther Woodcock is, don't we? He signs these things all the time. And he's got a medical consultant's code 19 there. ... [H]e's the one that does them all the time." [R. 31]. Dr. Woodcock is recognized both in the Social Security Administration and the Tenth Circuit as a medical consultant. See Shepherd v. Apfel, 184 F.3d 1196, 1202 (10th Cir. 1999); Ford v. Apfel, 216 F.3d 1087 (10th Cir. 2000) (unpublished); and Dixon v. Apfel, 189 F.3d 477 (10th Cir. 1999) (unpublished). Dr. Woodcock's medical credentials were also listed in the record on the Disability Determination Transmittals dated March 8, 2006, where his name is listed both as "Luther Woodcock" and as "L M Woodcock MD 19." [R. 59-60]. The Court finds that the ALJ's decision in this regard is supported by substantial evidence.

## Conclusion

Based on the foregoing, the Court **AFFIRMS** the decision of the Commissioner denying disability benefits to plaintiff.

IT IS SO ORDERED this 5th day of November, 2009.

_____
T. Lane Wilson
United States Magistrate Judge